[Crim. No. 733.  Third Appellate District.—December 5, 1923.]

## THE PEOPLE, Respondent, v. LOUIS RUBBATTINO, Appellant.

[1] INTOXICATING LIQUORS—DISQUALIFICATION OF SHERIFF—WAIVER OF OBJECTION.—In a prosecution for the unlawful sale of intoxicating liquors, where the defendant interposes a challenge to the special venire of jurors summoned by the sheriff on the ground that the sheriff swore to the complaint and such challenge is allowed and the special venire discharged, and a special venire is thereafter summoned by an elisor appointed by the court with the consent of both parties, and thereafter, without objection by defendant, the sheriff is one of the officers placed in the charge of the jurors during their deliberations, the disqualification of the sheriff is waived.

[2] ID.—IDENTITY OF PURCHASERS—EVIDENCE.—In this prosecution for the unlawful sale of intoxicating liquors, the evidence was sufficient to justify the jury in concluding that the sales of liquor were made to the persons as alleged in the several counts of the information.

APPEAL from a judgment of the Superior Court of Napa County. Percy S. King, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. S. Bell and John Delaney for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—By separate counts in the information the defendant was charged with three unlawful sales of intoxicating liquor. He was convicted on all of the three counts and his motion for a new trial was denied. This appeal is from the judgment and the order denying a new trial. The appeal is submitted upon the appellant's opening brief, filed after the cause was called for oral argument.

Appellant contends that the court "committed prejudicial error in placing the jury in the custody of the sheriff and his deputy after said sheriff had been disqualified in the case." The record does not show that the jurors were placed in charge of the sheriff or his deputy. All that ap-

pears in that connection is the following, taken from the clerk's and the reporter's transcripts, respectively: "The court now reads its instructions to the jury and the jury now retire in charge of two sworn officers." "The clerk swears two officers to take charge of the jury, and the jury then retires to deliberate."

[1] During the impanelment of the jury the sheriff, on the order of the court, summoned ten persons as a special venire. The clerk's transcript contains the following record of proceedings when these ten persons appeared in court: "The court orders that C. E. Brown be excused. . . . The defendant now interposes a challenge to the special venire of jurors summoned by the sheriff on the ground the sheriff of Napa County swore to the complaint in the cause. The court orders that the challenge be allowed and that the nine persons summoned on the special venire be discharged." A special venire was thereafter summoned by an elisor appointed by the court with the consent of both parties. There is no further reference in the record to the disqualification of the sheriff. If he was one of the officers placed in charge of the jurors during their deliberations, the record does not show that defendant made any objection thereto. Under such circumstances it must be held that the disqualification was waived. In *People* v. *Le Doux,* 155 Cal. 535, 544 [102 Pac. 517], it was held that where a sheriff is disqualified to summon a jury his deputy is likewise disqualified. In *People* v. *Nakis,* 184 Cal. 105 [193 Pac. 92], where the defendant was convicted of murder and sentenced to death, the sheriff of the county was admittedly disqualified and an elisor was appointed to summon two special venires of jurors. The jurors were placed in charge of a deputy sheriff on their retirement without objection by defendant. It was held that the disqualification was waived by failure to object. The decision in *People* v. *Stennett,* 51 Cal. App. 370 [197 Pac. 372], is to the same effect.

[2] The first count of the information charges an unlawful sale of liquor to C. P. Usher. Appellant contends that the evidence shows the sale was made to one McIsaacs. It is charged that the sale was made May 14, 1923. McIsaacs accompanied Usher to the defendant's home on that day. Usher testified: "I purchased from Mr. Rubbattino

one quart or one-fifth of intoxicating liquor. . . . I obtained this bottle of liquor from Mr. Rubbattino, himself, for the consideration of two dollars. . . . I believe Mr. McIsaacs asked him if we could get another bottle. . . . He told Mr. McIsaacs he could. . . . He gave a bottle to Mr. McIsaacs and I paid for it. . . . It was obtained by Mr. McIsaacs and paid for by me." This evidence is certainly sufficient to show a sale to Usher.

Count three charges a sale to Harry Jones. Appellant urges that the evidence shows that the sale was made to Usher and not to Jones. Relative to that sale Usher testified: "I said, 'Good evening, Mr. Rubbattino, I wonder if it would be possible for us to get a quart of liquor,' and he answered that it would and he brought out this bottle. . . . Q. Did he hand it to you? A. He handed it to me, yes, sir. Q. Did you thereupon pay him for it? A. I did not. I handed the bottle to Mr. Jones. . . . Q. Who did pay him for it, if anybody? A. Mr. Jones handed me the money and I gave it to Mr. Rubbattino. Q. So then you paid Mr. Rubbattino, you say, for this bottle? A. I paid Mr. Rubbattino with Mr. Jones' money. . . . Q. Did Mr. Jones get out of the car? A. He did not, no. Q. How far away from the car were you and Mr. Rubbattino? . . . A. I was standing about a yard from the car, talking to Mr. Jones, and Mr. Rubbattino came up and handed me the bottle. . . . Q. What did you do with the bottle the very next thing? A. I handed it to Mr. Jones. . . . He handed me two dollars. . . . Q. And you then gave the two dollars to Mr. Rubbattino? A. I did." The jury was justified in concluding from the foregoing evidence that the sale was made to Jones as alleged.

Appellant does not suggest any other errors and there is nothing to warrant a reversal on any of the grounds urged or on any ground appearing in the record.

The judgment and the order are affirmed.

Plummer, J., and Hart, J., concurred.